IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANTONIO JAMES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:10-cv-02082-JEO** |
| **CITY OF BIRMINGHAM, ALABAMA,** ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This case is before the court on defendants' Motion for Summary Judgment. (Doc. 53).[1] The motion has been fully briefed and is properly under submission before the court. (Docs. 54, 57 & 58). This case stems from an interaction between plaintiff and several City of Birmingham police officers that resulted in plaintiff being hit with a Taser and arrested for drinking in public. After the dismissal of two defendants and Count I (the excessive force claim),[2] the following claims remain: false imprisonment brought pursuant to § 1983 (Count II); malicious prosecution brought pursuant to § 1983 (Count III); negligence in hiring, training, supervision, and retention brought pursuant to § 1983 (Count IV); state law claim for assault and battery (Count V); state law claim for false arrest (Count VI); and state law claim for malicious prosecution (Count VII). (Doc. 1). Defendants contend that they are entitled to judgment as a matter of law on all remaining claims. (Doc. 1 at 1–2, 5). For the reasons set forth below, the motion is due to be

---

[1] References herein to "Doc. ___" are to the electronic numbers assigned by the Clerk of the Court. References to page numbers are to the electronic page numbers found at the top of the document. References to the depositions are to the page numbers and lines on the original document, not the electronic numbers.

[2] Specifically, Count I was dismissed as being barred by the statute of limitations on February 16, 2012. (Doc. 49). Further, the claims against defendants Eric Turner and Christopher Robinette were dismissed with prejudice on April 30, 2012. (Doc. 55).

granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Around 6:30 p.m. on July 28, 2008, plaintiff, Antonio James, left his job and went to a friend's house in Birmingham, Alabama. (Doc. 56 at ¶¶ 3-4). James's friend left the house shortly after James arrived, and, at approximately 7:30 p.m., James answered a knock at the front door. Upon opening the door, he saw a male police officer for the city of Birmingham, Jacorey Foster, standing on the front porch. (*Id.* at ¶ 5). Unbeknownst to James, the police had received a tip that "a possible felony suspect was located at the residence." (Doc. 54-1 at 1).

James testified that he was holding a beer as he opened the door but that he "had not drunk from it," and he did not drink alcohol at any time while the police were on the porch. (Doc. 56 at ¶¶ 5, 11). James testified that he remained in the doorway of the residence at all times and at no time stepped onto the front porch. (*Id.* at ¶ 12). The officer instructed James to get down. (*Id.*) James asked if he could help the officer or if the officer had a search warrant or if he was chasing someone, but again the officer ordered him to get down.[4] (*Id.*) At that time, James noticed a female officer, Katrina Looney, approach and stand next to Foster, and Foster instructed Looney to "hit him." (*Id.* at ¶ 6). James responded, "what do you mean, hit me?" (*Id.*) Looney then fired the taser two times, hitting James in the right hand and stomach. (*Id.*) James fell and lost consciousness. (*Id.* at ¶ 7). The officers then took James to Cooper Green Hospital in Birmingham, Alabama. (Doc. 54-1 at 2). Upon his release from the hospital, the

---

[3] The facts are presented in the light most favorable to the plaintiff for purposes of summary judgment.

[4] Officer Looney testified that she and Officer Foster warned James to get on the ground approximately twelve times (doc. 54-1 at 2), but James testified that he was given only two warnings. (Doc. 56 at ¶ 17). In the arrest report, however, Officer Looney documented that they had warned James to get down approximately seven times. (Doc. 54-2 at 2).

officers transferred James to the Birmingham jail and charged him with drinking in public. (*Id.*) James testified that he was not told that he was charged with drinking in public until he was released on bond on July 29, 2008. (*Id.* at ¶ 10).

While Officer Looney testified that James made statements such as: "I have been drinking all day, since 10:00 this morning, and y'all messed up my high;" "Regular beer doesn't do anything for me, I drink 211's and I've had over a case today;" and "I was drunk when y'all tased me." (Doc. 54-1 at 2). James testified that he did not make any of those statements. (Doc. 56 at ¶¶ 13-15). On January 26, 2010, when James appeared in court for the drinking in public charge, the case was dismissed. (*Id.* at ¶ 24; *see also* Doc. 1 at ¶ 28).

James filed his complaint against three police officers (Katrina Looney, Eric Turner, and Christopher Robinette),[5] A.C. Roper (chief of police of the City of Birmingham), and the City of Birmingham on July 29, 2010, pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and state law claims for assault and battery, false arrest, and malicious prosecution. (Doc. 1 at ¶ 2). The court previously dismissed plaintiff's § 1983 claim of excessive force as barred by the two-year statute of limitations. (Doc. 49 at 8). The court later dismissed defendants Christopher Robinette and Eric Turner because those officers were not present during the incident. (Doc. 55). The following claims remain pending before the court: (1) false imprisonment against Looney pursuant to § 1983; (2) malicious prosecution against Looney and the City of Birmingham pursuant to § 1983;

---

[5] Plaintiff's response to summary judgment makes several arguments related to whether officer Jacorey Foster is entitled to qualified immunity or state agent immunity. (Doc. 57 at 7-9). However, Foster is not a party to this action. He was not named in the style of the Complaint nor was he ever served. (Doc. 1). Accordingly, there are no claims pending against officer Foster.

(3) negligence in hiring, training, supervision, and retention against Roper and the City of Birmingham pursuant to § 1983; (4) a state law claim for assault and battery against Looney; (5) a state law claim for false arrest against Looney; and (6) a state law claim for malicious prosecution against Looney and the City of Birmingham.  (Doc. 1 at 4-9).

## SUMMARY JUDGMENT STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam ) (citation to former rule omitted); FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[6]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on

---

[6] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

which it bears the ultimate burden of proof. *Id.* at 322–24. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254). Nevertheless, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference, but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 646.

## ANALYSIS

I.     **Section 1983 Claims**

Plaintiff brings three claims pursuant to § 1983: (1) a false imprisonment claim against

defendant Looney; (2) a malicious prosecution claim against defendants Looney and the City; and (3) a "negligence in hiring, training, supervision and retention" claim against defendants Roper and the City. (Doc. 1 at 4-7).[7] The court will first address plaintiff's claims against the City before addressing those claims against Roper and finally the claims against Looney.

### A.     The City of Birmingham

Plaintiff's Complaint raises two § 1983 claims against the City – a claim for malicious prosecution and a claim for negligence in hiring, training, supervision, and retention. As a preliminary matter, plaintiff failed to respond to defendants' Motion for Summary Judgment as to the claims against the City. (Doc. 57). By not responding, plaintiff abandoned his § 1983 claims against the City. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 971 n. 36 (11th Cir. 2008) ("[Plaintiff] did not defend the claim on summary judgment; he thus abandoned it."); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that claims not addressed in response to motion for summary judgment are deemed abandoned).

However, even assuming plaintiff had not abandoned his claims against the City, the City would still be entitled to summary judgment as to the § 1983 claims. It is well settled that a municipality cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior,

---

[7]As addressed in more detail below, a municipality cannot be held liable for the actions of its employees. Rather, to hold a municipality liable under § 1983, a plaintiff must show that his injuries were caused by a policy or custom of the City. However, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Thus, the court can only assume that by including a count for "Negligence in Hiring, Training, Supervision and Retention by Roper and Birmingham," plaintiff sought to include language seeking to hold Roper and the City liable under § 1983 for the claims of false imprisonment and malicious prosecution. (*See* Doc. 1 at ¶ 43) ("The foregoing acts, omission, and systematic deficiencies are policies and customs of defendants, Roper and Birmingham, and such deficiencies cause[d] its police officers to be unaware of proper rules for arrest and imprisonment, all with the foreseeable results that officers are more likely to engage in false arrests, imprisonments and malicious prosecutions.")

meaning that "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978)(emphasis in original). Rather, before a municipality can be held accountable for the conduct of a police officer, a plaintiff must show that the execution of the local government's official "policy" or "custom" was the cause of the injury. *Id.* at 694. In other words, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson Cnty*, 137 F.3d 1285, 1287 (11th Cir. 1998) (citing *Pembarr v. City of Cincinatti*, 475 U.S. 469, 479–480 (1986)).

Here, plaintiff has not offered any evidence that the City of Birmingham has any policy or ordered any unlawful act related to the alleged false imprisonment and malicious prosecution of plaintiff. Further, there is no evidence that establishes a causal link between any policy or failure to train or enforce its policies by the City of Birmingham and plaintiff's imprisonment and subsequent prosecution. Accordingly, the City of Birmingham cannot be held liable on plaintiff's claims under § 1983, and thus, summary judgment for the § 1983 claims against the City of Birmingham is due to be granted in favor of the City.

  **B.**  **Chief Roper**

Plaintiff also claims that Roper, Chief of Police of the City of Birmingham, was negligent in the hiring, training, supervision, and retention of Officer Looney. (Doc. 1 at 6). Like with the City, plaintiff failed to respond to these claims; thus, they are abandoned. However, even if the claim was not waived, it fails as a matter of law because there is no liability for supervisory officials based on respondeat superior or vicarious liability. *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992). A supervisory official is not liable for an injury that results from his failure to

train subordinates unless his "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Popham v. City of Talledega*, 908 F.2d 1561, 1565 (11th Cir. 1990). Thus, the question here is whether plaintiff can show that Roper failed to train the officers and that this failure to train amounted to deliberated indifference of the rights of others. Plaintiff shows no evidence of either. The claim of negligence in hiring, training, supervision, and retention by Roper is, therefore, due to be dismissed and summary judgment as to this claim is due to be granted.

      C.      **Officer Looney**

Plaintiff claims that Officer Looney violated his constitutional rights by falsely imprisoning and maliciously prosecuting him. (Doc. 1 at 4–5). Defendants moved for summary judgment on each claim, arguing both that plaintiff's claims fail on the merits and that Looney is entitled to qualified immunity.

      1.      **False Imprisonment**

Plaintiff argues that Looney deprived him of liberty without due process of law, in violation of the Fourth and Fourteenth Amendments, when she detained him in a patrol car, at the hospital, and in jail for a day. (Doc. 1 at 4). "A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (citations omitted). The required elements of a common law false imprisonment claim are: an intent to confine, an act resulting in confinement, and the victim's awareness of the confinement. *Id.* (citations omitted). "The Fourteenth Amendment Due Process Clause includes the 'right to be free from continued detention after it was or should have been known that the detainee was entitled to release.'" *Id.*

8

(citations omitted).

There is no question that the common law elements of false imprisonment are met here – plaintiff was arrested and confined. Clearly there was an intent to do so, an act resulting in the confinement, and plaintiff was obviously aware of said confinement. Thus, the question that remains before the court is whether plaintiff was detained after "it was or should have been known that the detainee was entitled to release." *Id.* Here, the question turns on whether the initial arrest was proper and, if so, whether Looney later discovered that "the probable cause which formed the basis of the arrest was unfounded." *See Strickland v. City of Dothan*, 399 F. Supp. 2d 1275, 1291 (M.D. Ala. 2005).

"In order to prevail on a section 1983 claim alleging that his warrantless arrest was unconstitutional, a plaintiff has the burden at trial to prove the absence of probable cause." *Walker v. Briley*, 140 F. Supp. 2d 1249, 1257 (N.D. Ala. 2001). Probable cause to arrest an individual "exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004). Plaintiff was arrested for violating Birmingham City Code § 12-10-9 (1980), which states:

> (a)    It shall be unlawful for any person to drink or have in open or unconcealed possession or custody for drinking any liquor or wine, at or in any public place in the city other than a licensed liquor place, which shall include outdoor cafes authorized for the sale of alcoholic beverages by resolution of the city council.

9

> (b) It shall be unlawful for any person to drink, or have in open or unconcealed possession or custody for drinking, any malt beverage or brewed beverage at or in any public place in the city other than a licensed beer place or licensed liquor place, which shall include outdoor cafes authorized for the sale of alcoholic beverages by resolution of the city council.

Birmingham City Code § 12-10-9 (1980) (as amended by Ord. No. 91-103, 5/28/91). Thus, the question is whether Looney had probable cause to believe that plaintiff was drinking, or had in his unconcealed possession, beer at or in a public place.[8]

As this case is before the court on defendants' motion for summary judgment, the court must consider the facts in the light most favorable to the plaintiff. In plaintiff's version of the events, he was standing inside the doorway of a residence holding a can of beer (plaintiff asserts that he did not drink from the beer during his interaction with the police officers). (Doc. 56 at ¶ 5). Plaintiff contends he never stepped on the front porch while talking to the officers and that at all times he "remained inside of the doorway" to the house. (*Id.* at ¶ 12). Because plaintiff never left the confines of the house, he could not have been considered by defendant Looney to be in public.[9] The ordinance only criminalizes drinking any malt or brewed beverage "*at or in any*

---

[8] It is undisputed that the alcoholic beverage in question was a beer.

[9] Defendants assert that if plaintiff had stepped on to the front porch he would have been in public. (Doc. 54 at 22). This contention is arguably supported by Alabama law, which the Alabama Court of Criminal Appeals summarized in *Schultz v. State*, 437 So. 2d 670 (Ala. Crim. App. 1983): "Compare *Warren v. City of Auburn,* 337 So.2d 1319 (Ala. 1976) (the defendant drinking beer in yard of his apartment house was in a "public place", for purposes of public intoxication ordinance, because he and his beer can could be observed from a public street); *Lee v. State,* 136 Ala. 31, 33 So. 894 (1903) (dice players forty yards from highway were in a "public place", within the meaning of gaming statute, because their activities were visible to persons traveling the highway); and *Henderson v. State,* 59 Ala. 89 (1877) (gamblers in bushes on edge of field forty yards from road were in a "public place" because they were in view of a path used by schoolchildren); with *Smith v. State,* 23 Ala. 39 (1853) (hollow located 100-115 yards from main road and *not* visible from highway was *not* a "public place"); *Taylor v. State,* 22 Ala. 15 (1853) (field surrounded by forest one mile from highway *not* a "public place" because not visible from public roadway); and *Bythwood v. State,* 20 Ala. 47 (1852) (hollow in the woods 400 yards from highway and out of sight *not* a "public place"). *Id.* at 673.

However, accepting plaintiff's version of events as true, plaintiff was not on the front porch, rather, the facts

10

*public place.*" Birmingham City Code § 12-10-9(b). Thus, under plaintiff's version of the events, defendant Looney did not have probable cause for the arrest because she could not have reasonably believed that plaintiff was committing the crime of drinking in public. Of course, whether plaintiff stepped outside of the house is disputed by defendants. (Doc. 54-2) ("[T]he defendant staggered on to the front porch drinking a 12 oz 211 beer."), (Doc. 54-4) ("Antonio James opened the door and came outside the house onto the porch."). Plaintiff's actions prior to his arrest are clearly in dispute. However, viewing the facts in the light most favorable to plaintiff, defendant Looney lacked probable cause to arrest plaintiff, which means plaintiff's subsequent detention was in violation of his rights. Accordingly, defendant Looney is not entitled to summary judgment on the merits of the false imprisonment claim.[10]

### 2. Malicious Prosecution

Plaintiff's claim for malicious prosecution alleges that Looney disregarded plaintiff's right to be free from unreasonable, unwarranted prosecution. (Doc. 1 at 5). "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Wood*, 323 F.3d at 881 (emphasis in original).

---

show that plaintiff was inside the doorway of the home at all times. *See* ALA. CODE. § 13A-11-1 ("PUBLIC PLACE. A place to which the public or a substantial group of persons has access, and includes but is not limited to highways, transportation facilities, schools, places of amusement, parks, playgrounds and hallways, lobbies and other portions of apartment houses not constituting rooms or apartments designed for actual residence; provided, that no private dwelling and no place engaged for a private gathering is included within the meaning of public place with respect to any person specifically invited therein."). To the extent plaintiff may have been visible from the street while the door was open and he was interacting with the police, that circumstance was initiated by the police when they knocked on the door and cannot constitute being willingly in public. *See Martin v. State*, 17 So. 2d 427 (Ala. Ct. App. 1944).

[10] Looney also argues that she is entitled to qualified immunity on this claim, which the court will address below.

Plaintiff must establish the following elements to support a claim of malicious prosecution: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882. "In an action for malicious prosecution after an acquittal, a plaintiff must show that the criminal action was begun without probable cause for charging the crime in the first place." *Hartman v. Moore*, 547 U.S. 250, 258 (2006).

Here, plaintiff satisfies three of the four elements of a malicious prosecution claim. It is undisputed that defendant Looney instituted a criminal prosecution against him (doc. 1 at ¶ 27–32), (*see* Doc. 54 at 10-11), that the prosecution was terminated in plaintiff's favor. (Doc. 56 at ¶ 24), and that the prosecution against plaintiff caused damage to him in the form of a lost job and financial loss, physical pain, and emotional distress. (*Id.* at ¶¶ 25-26). The only element in dispute is whether the prosecution was instituted with malice and without probable cause. This is further limited by the fact that Defendants only argue the issue of whether there was probable cause. (Doc. 54 at 10-11). Thus, the question here is whether defendant Looney had probable cause to institute the criminal prosecution. The court has already established that, under plaintiff's version of the events, there was no probable cause for the arrest. (*See* § I.C.1). Accordingly, it follows that there was no probable cause for the prosecution. Absent a showing that there was probable cause for the prosecution, defendant Looney cannot establish she is entitled to judgment as a matter of law on the merits of the malicious prosecution claim.

### 3. Qualified Immunity

In addition to arguing that defendant Looney is entitled to summary judgment on the

merits of the two constitutional claims, defendants also argue that she is entitled to qualified immunity. (Doc. 54 at 9). Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To receive qualified immunity, Looney must first prove that she "was acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003), *cert. denied*, 540 U.S. 879 (2003).

Once defendants have asserted that defendant Looney is entitled to qualified immunity, the burden shifts to the plaintiff to show: (1) that the officer violated a constitutional right and (2) that this right was clearly established at the time. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under plaintiff's version of the facts, if there would have been a violation of a constitutional right, the next step "is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

It is uncontested that Looney was acting within the scope of her discretionary authority when she arrested plaintiff. (*See* Doc. 57). Thus, the preliminary question before the court is whether plaintiff's allegations, if true, establish a constitutional violation. The central issue to both claims is whether there was probable cause to arrest plaintiff. *See Atterbury v. City of Miami Police Department*, 322 Fed. App'x 724, 727 (11th Cir. 2009). As established above, the court finds that under the facts asserted by plaintiff, defendant Looney did not have probable

cause to arrest plaintiff. However, "[a]bsent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). In other words, Looney is entitled to qualified immunity if she had arguable probable cause for the arrest. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Arguable probable cause is present where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).

The question here is whether a reasonable officer would believe that probable cause existed to arrest a person for drinking in public when the person in question was holding a beer inside a private residence. The court finds that a reasonable officer would not believe there was probable cause in such a situation. As addressed in detail above, no reasonable officer would believe that actions taken inside of a private residence were in public. Thus, there was no arguable probable cause. Because there was no arguable probable cause under plaintiff's version of the events, plaintiff has established that were constitutional violations and the court must turn to the next prong of the analysis, whether the rights that were allegedly violated were clearly established.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Vinyard*, 311 F.3d at 1350 (emphasis omitted) (internal quotation marks omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ..., but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In addressing whether a violation was clearly established, the Eleventh Circuit has stated the following:

> We recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction. *See Hope,* 536 U.S. at 741, 122 S. Ct. at 2516 ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." (alteration in original) (internal quotation marks omitted)); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1032 n. 9 (11th Cir. 2001) (en banc) ("[P]reexisting case law, tied to the precise facts, is not in every situation essential to establish clearly the law applying to the circumstances facing a public official so that a reasonable official would be put on fair and clear notice that specific conduct would be unlawful in the faced, specific circumstances."); *see also Vinyard v. Wilson,* 311 F.3d 1340, 1351-52 (11th Cir. 2002) (explaining the relationship of the three sources of law in an excessive force case). The more general the statement of law is that puts the official on notice, the more egregious the violation must be before we will find that the official is not entitled to qualified immunity. *See Brosseau v. Haugen,* 543 U.S. 194, 199, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) (per curiam) (finding, in a Fourth Amendment excessive force case, that although "in an obvious case, [general tests] can 'clearly establish' the answer, even without a body of relevant case law," reference to specific cases is necessary where the question is closer); *Hope,* 536 U.S. at 740-41, 122 S. Ct. at 2516 ("This is not to say ... that the single warning standard points to a single level of specificity sufficient in every instance .... [When considering] a general rule ... a very high degree of prior factual particularity may be necessary." (internal quotation marks omitted)); *Vinyard,* 311 F.3d at 1351-52 (requiring more obvious violations of rights the more generally the rights are framed).

*Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007)

Here, there is no question that it was obvious from the text of the ordinance at issue Birmingham City Code § 12-10-9 only prohibits drinking, or having in open or unconcealed possession or custody for drinking, any malt or brewed beverage, in a public place.  The language

"public place" obviously excludes a private residence. *See* ALA. CODE. § 13A-11-1. To say otherwise would be absurd. No reasonable officer would think that drinking or holding a beer in a private residence constitutes drinking in public. Accordingly, it was clearly established at the time of the arrest that drinking in a private residence does not provide probable cause for drinking in public. Thus, defendant Looney is not entitled to qualified immunity on the § 1983 claims.

## II.     State Claims

The remaining claims are all based in state law: a claim for assault and battery against defendant Looney[11], a claim for false arrest against defendant Looney, and a claim for malicious prosecution against defendants Looney and the City. (Doc. 1 at 8-9). As a preliminary matter, because plaintiff failed to respond to the motion for summary judgment as to the malicious prosecution claim against the City, that claim is deemed abandoned and the City is entitled to summary judgment on that claim. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 995, 971 n. 36 (11th Cir. 2008). Having addressed the claim against the City, the court now turns to the remaining claims against defendant Looney. Defendant Looney argues she is entitled to discretionary function immunity under ALABAMA CODE § 6-5-338 on the assault and battery claim and entitled to summary judgment on the merits of the false arrest and malicious prosecution claims. The court will address each argument in turn.

---

[11] The court has serious doubts about whether Count V of plaintiff's Complaint (doc. 1) actually states a claim against defendant Looney. (Doc. 1 at 7). Specifically, the title of the claim states "Count V: Pendent State Claim for Assault and Battery by Defendant Turner or Robinett." There is no reference to defendant Looney in that count except for in paragraph 48 when plaintiff alleges, "Defendant, Looney, Turner and Robinett, assaulted and battered plaintiff by hitting him with a Taser." (Doc. 1 at ¶ 48). However, because defendants addressed this claim at length in their motion for summary judgment (doc. 54 at 18-20), the court will also address it.

A.     **Discretionary Function Immunity on the Assault and Battery Claim**

Unlike the other claims before the court, plaintiff's claim for assault and battery stems not from his arrest, but from the fact that prior to being arrested, Defendant Looney hit plaintiff with a Taser. (Doc. 56 at ¶¶ 6-7). Defendants argue that Officer Looney is entitled to discretionary function immunity under ALABAMA CODE § 6-5-338 (1975). (Doc. 54 at 15-24). The Eleventh Circuit recently summarized Alabama's law concerning immunity for police officers as follows:

> Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles,* 852 So. 2d 117, 122 (Ala. 2002). In *Ex parte Cranman,* 792 So. 2d 392 (Ala. 2000), a plurality of the Alabama Supreme Court restated and clarified the scope of Alabama's state-agent immunity doctrine, which bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise. *Id.* at 405....
>
> There is also statutory, discretionary-function immunity in Alabama. Specifically, § 6-5-338 of the Alabama Code contains a provision immunizing law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties. ALA. CODE § 6-5-338(a) (1994) ( "Every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."). *Cranman*'s test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a). *Ex parte City of Tuskegee,* 932 So. 2d 895, 904 (Ala. 2005) ("The restatement of State-agent immunity as set out in *Cranman,* 792 So. 2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)."). So for our purposes, the question of whether City police officers [] receive immunity for Plaintiffs' state-law claims depends on application of *Cranman*'s state-agent immunity test.
>
> The Alabama Supreme Court established a burden-shifting framework for application of the state-agent immunity test. A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle the agent to immunity. *Ex parte Estate of Reynolds,* 946 So. 2d 450, 452 (Ala. 2006). "If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or

17

beyond his or her authority." *Id.*

*Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740-41 (11th Cir. 2010)

Here, plaintiff does not dispute that when defendant Looney subdued plaintiff with the Taser that she was performing a discretionary function in the line and scope of her law enforcement duties. (*See* Doc. 57 at 7-9). Rather, plaintiff argues that Looney "acted in bad faith by demanding entry without a warrant," "acted beyond [her] authority when [she] arrested James for possessing an alcoholic beverage in a residence," and "acted under a mistaken interpretation of the law when [she] thought that a person responding to a knock at a door is in the public." (*Id.* at 9). However, none of these arguments has anything to do with whether defendant Looney acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority when she hit plaintiff with the Taser. Further, upon independent review of the facts presented by plaintiff, the court finds there is not sufficient evidence to show that defendant Looney acted in such a manner as to strip her of immunity. Specifically, the record --viewed in the light most favorable to plaintiff--shows that officers Looney and Foster received a report that a felony suspect might be at 7808 Division Avenue; that plaintiff answered the door to 7808 Division Avenue after Officer Foster knocked; that Officer Foster told plaintiff twice to get down, but plaintiff did not get down; that Officer Foster told defendant Looney to "hit him"; to which plaintiff responded, "what do you mean, hit me?"; and finally that defendant Looney hit plaintiff with the Taser. Simply put, there is nothing in the above series of events to show that defendant Looney acted willfully, maliciously, fraudulently, in bad faith, beyond her authority, or under a mistaken interpretation of law. Thus, she is entitled to discretionary function immunity with respect to the assault and battery claim. Because defendant Looney has immunity with respect to this claim,

summary judgment is due to be granted in her favor.

### B.  False Arrest and Malicious Prosecution Claims

Like the federal claims, both state claims turn on whether defendant Looney had probable cause to arrest plaintiff.[12]  *See Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831–32 (Ala. 1999), *Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala. 1995).  "Alabama's standard for the existence of probable cause is the same as the federal standard." *Walker*, 140 F. Supp. 2d at 1262 (citing *Nesmith v. Alford*, 318 F.2d 110, 122 (5th Cir. 1963)).  Thus, the court's analysis with respect to whether there was probable cause for the arrest with respect to plaintiff's § 1983 claims, applies here.  Accordingly, the court finds there is an issue of fact as to whether plaintiff voluntarily stepped outside of the house, thus precluding a finding that defendant Looney had probable cause to arrest plaintiff.  Accordingly, defendant Looney is not entitled to summary judgment on these claims.[13]

---

[12] To prove that defendant Looney maliciously prosecuted plaintiff, plaintiff would have to show, among other things, that the prosecution was instituted with malice and without probable cause. (*Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831–32 (Ala. 1999)).  However, in their motion for summary judgment, defendants did not address the malice requirement.  (Doc. 54 at 23)("If probable cause is shown to exist, then all the malice in the world is irrelevant to the claim.").  Accordingly, the court must find that defendants conceded the malice requirement for purposes of summary judgment.

[13] It is not clear from defendants' brief whether they are also arguing that Looney is entitled to summary judgment because she has discretionary function immunity for the false arrest and malicious prosecution claims.  Nevertheless, any such assertion must fail.  It is established that "[m]alice is an inference of fact, and it may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful." *Walker*, 140 F. Supp. 2d at 1263 (citing *Bryant*, 738 So.2d at 833).  Notably, "[p]ersonal ill will or a desire for revenge is not essential to the existence of malice." *Delchamps, Inc. v. Larry*, 613 So. 2d 1235, 1239 (Ala. 1992).  Because malice can be inferred from the facts or from a lack of probable cause, that inference of malice "may be rebutted by evidence showing that the defendant acted in good faith." *Bryant*, 738 So.2d at 833.  Thus, this court can infer malice from the lack of probable cause plaintiff has established at summary judgment.  Further, defendants have not rebutted this inference by showing that Officer Looney was acting in good faith.  Consequently, the inference of malice precludes a finding that Officer Looney is entitled to discretionary function immunity on this claim.  *See also, Brown v. City of Huntsville, Ala.*, 608 F.3d at 41 (finding that officers are not entitled to discretionary function immunity when the officers did not have arguable probable cause for an arrest).

**CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment (doc. 53) is due to be granted in part and denied in part. All claims against the City and defendant Roper are due to be dismissed with prejudice. Additionally, Count V is also due to be dismissed with prejudice. The following claims remain: (Count II) false imprisonment against Looney pursuant to § 1983; (Count III) malicious prosecution against Looney pursuant to § 1983; (Count VI) the state law claim for false arrest against Looney; and (Count VII) the state law claim for malicious prosecution against Looney.

**DONE**, this 19th day of February, 2013.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge